Frank J. ABELLA, Jr. on behalf of and in the name of Universal Leaf Tobacco Co., Incorporated, Plaintiff,

v.

UNIVERSAL LEAF TOBACCO CO., INC. et al., Defendants.

Civ. A. No. CA79–0073–R.

United States District Court, E. D. Virginia, Richmond Division.

Aug. 6, 1980.

Alan E. Bandler, Kass, Goodkind, Wechsler & Labaton, New York City, G. Rodney Sager, Richmond, Va., for plaintiff.

Robert E. DeRight, Jr., Craig M. Walker, Alexander & Green, William C. Sterling, Jr., Peter D. McKenna, Wachtell, Lipton, Rosen & Katz, New York City, Frank B. Miller, III, Sands, Anderson, Marks & Miller, Richmond, Va., James C. Roberts, Gary J. Spahn, F. Claiborne Johnston, Jr., Mays, Valentine, Davenport & Moore, Richmond, Va., for defendants.

MEMORANDUM

MERHIGE, District Judge.

Plaintiff brings this derivative action on behalf of Universal Leaf Tobacco Co., a Virginia corporation, (hereinafter "Universal"), to recover approximately 1.2 million dollars from individual directors and officers of Universal expended by the corporation in opposition to a takeover bid by another corporation. Additionally, plaintiff seeks the removal of the individual defendants as directors and the appointment of a receiver until a new Board of Directors is installed.

The individual defendants are alleged to have breached their fiduciary duties owed to plaintiff and all other Universal shareholders in defeating a proposed tender offer by Congoleum Corporation (hereinafter "Congoleum"), effected by the payment to Congoleum of 1.2 million dollars. The defendants' actions, taken between October 1976 and June 1977 are also alleged to have violated § 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. (hereinafter "the 1934 Act") as deceptive and manipulative practices in connection with a tender offer. It is asserted by plaintiff that because a majority of the current Board of Directors is named as defendants in this action, plaintiff made no demand upon the corporation prior to commencing the instant suit. See Fed.R.Civ.P. 23.1.

Plaintiff invokes the jurisdiction of the Court under § 27 of the 1934 Act, 15 U.S.C. § 78aa, under 28 U.S.C. § 1332, and under the Court's pendent jurisdiction over state law claims.

Defendant Universal has moved to dismiss the instant complaint, or, in the alternative, for summary judgment. The basis of Universal's motion is that a specially appointed committee of Universal's Board of Directors has recommended abandonment of the lawsuit based upon a review of what it found to be the meritless claims contained therein. Concluding that the continued maintenance of the derivative action was not in the best interests of the corporation, this special litigation commit-

tee urged dismissal of the action. Universal argues that this decision by a committee of disinterested directors and outside counsel not named as defendants in this action must be deferred to by the Court under the business judgment rule, absent a showing of bad faith.

The facts relevant to Universal's motion are as follows.

Plaintiff's action arises out of an attempted takeover of Universal by Congoleum in 1976 and 1977 which Universal opposed. Universal's resistance took the form of several lawsuits against Congoleum and its financing banks, of an administrative proceeding before the Virginia State Corporation Commission, and of the adoption by Universal's shareholders of a so–called "super–majority" amendment to Universal's Articles of Incorporation requiring the approval by 80% of the shareholders of any merger agreements or similar organic changes in the corporation. Ultimately, on June 8, 1977, Congoleum and Universal reached a settlement whereby Congoleum agreed to withdraw its proposed tender offer and abandon its takeover attempt in exchange for Universal's dismissal of the pending lawsuit involving Congoleum and for Universal's payment to Congoleum of $1,208,500, representing Congoleum's expenses incurred pursuant to its takeover bid.

On January 5, 1977, prior to Universal's settlement with Congoleum, plaintiff filed a purported class action and derivative suit in the United States District Court for the Southern District of New York, seeking to enjoin the convening of the shareholder meeting scheduled for consideration of the aforementioned "super–majority" amendment to the corporation's charter. Plaintiff was denied a preliminary injunction and his complaint was ultimately dismissed based upon the court's finding that he was not a shareholder on the record date for voting at the shareholder meeting. Plaintiff filed the instant suit on May 17, 1978, in the United States District Court for New Jersey. The action was subsequently transferred to this court on the ground that New Jersey was

an inappropriate forum. Plaintiff alleges, as heretofore noted, that the named directors chiefly responsible for the opposition to the Congoleum takeover violated both state law concerning fiduciary duties owed by corporate directors to stockholders, and federal securities law concerning deceptive practices related to tender offers.

On December 7, 1979, Universal's Board of Directors adopted a resolution establishing a Special Litigation Committee (hereinafter "Special Committee") to determine whether maintenance of the instant derivative suit, filed one and a half years prior thereto, was in Universal's best·interest and what position the corporation would take regarding the suit. Serving on the Special Committee were two directors who were not Board members at the time of the Congoleum takeover attempt and who were thus not involved in Universal's opposition thereto. One of the two was elected to the Board by Universal's shareholders in October, 1978, and the other was appointed as a director by the Board at the December 7, 1979 meeting. Neither director is named as a defendant in this action. The Special Committee retained independent legal counsel and special counsel to assist in its investigation.

After numerous meetings held to review a substantial mass of information, the special committee issued its findings and conclusions in a report dated March 20, 1980, and in a supplemental report dated April 4, 1980. The committee concluded that plaintiff's derivative suit had little, if any, merit, and that any possible recovery would be outweighed by the expense of litigation and by the resulting disruption of the corporation's business. The committee recommended that the necessary steps be taken to effect the dismissal of this action.

Based upon these reports and recommendations, Universal filed its motion to dismiss or for summary judgment. Universal argues that the business judgment rule allows a disinterested committee of a corporation's directors to dismiss a shareholder derivative suit brought on behalf of that corporation where the committee concludes in

the exercise of its business judgment that the suit is not in the corporation's best interest. When such judgment forms the basis of a motion to dismiss or for summary judgment, Universal argues that the Court cannot inquire into the deliberations or conclusions of the committee, but can only inquire into the disinterested independence of the committee from the alleged wrongdoers. If the Court satisfies itself that the committee was in fact disinterested, and exercised its business judgment in good faith, Universal contends that dismissal of this suit or judgment in favor of all defendants is mandated.

Universal cites several recent cases in which both state and federal courts have awarded summary judgment in, or granted dismissal of shareholder derivative suits based upon the business judgment of the respective corporations that the suits were not in their best interest. *See Lewis v. Anderson*, 615 F.2d 778 (9th Cir. 1980); *Abbey v. Control Data Corp.*, 603 F.2d 724 (8th Cir. 1979), *cert. denied*, 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980); *Maldonado v. Flynn*, 485 F.Supp. 274 (S.D.N.Y.1980); *Aurbach v. Bennett*, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979). The rationale supporting these dismissals of shareholder derivative suits is, basically, the following: the law of each state of incorporation involved in the respective case entrusted the management of the corporation to the board members in the exercise of their best business judgment; directors' management decisions may not be challenged so long as they exercise their best business judgment in good faith; the decision whether or not to institute legal proceedings to enforce a right of the corporation is a management decision; therefore, the decision by the board or a disinterested committee thereof to dismiss a suit on its behalf is shielded from judicial scrutiny by the business judgment rule.

The U.S. Supreme Court recently gave its tacit approval of director termination of shareholder derivative suits in *Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979). Plaintiffs in *Burks* were shareholders of an investment company who challenged actions by the company's directors as violative of federal investment laws and of the common law. A group of disinterested directors, after determining that the suit was contrary to the corporation's best interest, sought and was granted a dismissal of the action. The Supreme Court held in *Burks* that director termination of derivative suits could be upheld where the law of the state of incorporation allows the board or a disinterested committee thereof to dismiss such actions, and where such state rule is not inconsistent with relevant federal law.

The threshold inquiry for this Court, therefore, is whether Virginia law, as the law governing Universal's incorporation, permits disinterested directors to terminate a shareholder derivative action. Unable to find any opinion of the Virginia Supreme Court that addresses this issue directly, this Court must assume the role of a Virginia court and apply what it finds to be the relevant Virginia law. *Commissioner of Internal Revenue v. Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

■ Under Virginia corporation law, the management of the "business and affairs of a corporation" is entrusted to a board of directors. Va.Code § 13.1–35 (1950). As early as 1889, in discussing the duties of bank directors, the Supreme Court of Appeals of Virginia stated:

"[Directors] are bound to exercise ordinary skill and diligence, and are liable for losses resulting from mismanagement of the affairs and business of the bank" . . . . "They are required simply to show a reasonable capacity for the position they accept; to use in it their best discretion and industry; to show the scrupulous *bona fides* and conscientiousness in every matter, however minute . . . and to obey accurately the requisitions of the charter, or of the general law under which they are organized."

*Marshall v. Farmers' & Mechanics' Savings Bank*, 85 Va. 676, 682, 8 S.E. 586, 589 (1889) (citations omitted). When challenged in the courts, management decisions concerning

the internal affairs of a Virginia corporation will not be upset absent a showing of gross mismanagement or bad faith. *Penn v. Pemberton & Penn, Inc.*, 189 Va. 649, 660, 53 S.E.2d 823, 829 (1949).

■ The decision of whether or not to institute legal proceedings on behalf of the corporation is commonly regarded as a matter of internal management to be left to the discretion of the directors. *See United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 263–64, 37 S.Ct. 509, 510–511, 61 L.Ed. 1119 (1917). A shareholder generally has *no right to sue in his own name* upon a cause of action existing in the corporation. *Mount v. Radford Trust Co.*, 93 Va. 427, 430, 25 S.E. 244, 245 (1896). For a shareholder to bring suit on behalf of the corporation,

> he must allege and prove that a request or demand has been made upon the board of directors or other body managing the corporation that they institute proceedings on the part of the corporation against the wrongdoers, and their refusal to do so after reasonable request or demand; or he must allege such a state of facts as will show that the defendants whom he charges with the wrongdoing constitute a majority of the board of directors or managing body at the time of the suit, or that they or a majority of them are under the control of the defendant wrongdoers, so that the court may infer that they would refuse to bring such suit . . . . .

*Id.; see Virginia Passenger & Power Co. v. Fisher*, 104 Va. 121, 51 S.E. 198 (1905). In the event that the directors refuse to enforce the corporation's right in court, a shareholder may then sue in a derivative capacity only upon a showing "either that the managing agents are themselves the authors of the wrong, or that their refusal to bring suit in the name of the corporation is an act of bad–faith, or an abuse of the discretionary power vested in them." *Rathbone v. Parkersburg Gas Co.*, 31 W.Va. 798, 8 S.E. 570 (1888), *cited in Virginia Passenger & Power Co. v. Fisher, supra* at 123, 51 S.E. at 200.

■ Universal argues that the business judgment rule, as applied under Virginia law to shield directors' discretionary management decisions, requires this Court to defer to the judgment of its Special Committee that plaintiff's suit is without merit. After reviewing the relevant Virginia law concerning directors' business judgment and their control over shareholder derivative suits, however, this Court concludes that Virginia law does not permit directors, interested or disinterested, to effect the dismissal of a derivative suit against a corporation and its directors, based simply upon their business judgment that the suit is contrary to the corporation's best interests.

The chief flaw in Universal's argument is that no such connection between the business judgment rule and shareholder derivative suits has been made or suggested by the relevant Virginia cases or statutes. Indeed, the Court finds, as did the Delaware Chancery Court in *Maldonado v. Flynn*, 413 A.2d 1251 (Del.Ch.1980), and the United States District Court for the Southern District of Texas in *Maher v. Zapata Corp.*, 490 F.Supp. 348 (S.D.Tex.1980) in construing Delaware law, that the business judgment rule is irrelevant to the question of Universal's motion to dismiss. Plaintiff does not challenge in this suit the Special Committee's recommendation to dismiss the suit, a judgment that might be shielded from judicial scrutiny. Instead, plaintiff challenges the directors' decision to oppose the Congoleum takeover and the defensive methods employed by them, the reasonableness and good faith of which are at issue here.

■ Plaintiff's independent right to institute litigation in the corporation's behalf is conditioned under Virginia law only upon a showing of a demand upon the director or of circumstances excusing such demand from being made. *See Issner v. Aldrich*, 254 F.Supp. 696, 700 (D.Del.1966). Here, plaintiff has foregone a demand upon the Board due to his allegations that most of the directors are involved in violations of federal and state law. For defendants to warrant a dismissal at this stage in the proceedings, they must challenge plaintiff's

justification for making no demand upon the board of directors, *i. e.*, challenge the basis for plaintiff's allegations of wrongdoing on the part of the defendant directors. The Court owes no deference to the assessment of those allegations made by a committee of disinterested directors under the business judgment rule, as the rule never comes into play.[1]

■ The only bar to plaintiff's complaint that may come into play here is any shareholder ratification of the allegedly wrongful action by the defendant directors. The Supreme Court of Appeals of Virginia held in *Koch v. Seventh Street Realty Corp.*, 205 Va. 65, 135 S.E.2d 131 (1964), that where a majority of the shareholders have ratified, as by vote at a shareholder meeting, directors' decisions subsequently challenged in a derivative suit, such ratification is a bar to a shareholder's right to sue on behalf of the corporation. However, the record in the instant case does not as yet reveal any such ratification of the allegedly wrongful acts by the defendant directors. In the absence of shareholder ratification, and having found no preclusion through the business judgment rule, the Court must deny the instant motions.

An appropriate order shall issue.

1. Because the Court concludes that Virginia law does not permit disinterested directors to require the dismissal of derivative suits, it is unnecessary to address the second inquiry under *Burks* into the compatibility of such a state rule with federal policies.